IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DANIEL JOSEPH HAWVER**, | Case No. 3:12-cv-02211-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN**, Commissioner of Social Security. | |
| Defendant. | |

George J. Wall, 1336 E. Burnside Street, Suite 130, Portland, OR 97214. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Nancy A. Mishalanie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 901, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Daniel Joseph Hawver seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

PAGE 1 – OPINION AND ORDER

for Supplemental Security Income. For the following reasons, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## BACKGROUND

### A. The Application

Mr. Hawver is a 43-year-old man. He filed an application for Supplemental Security Income Benefits on July 29, 2009, alleging an onset date of December 15, 2006, later amended to July 3, 2003. AR 21, 42. He alleged disability due to schizophrenia, memory problems, and anxiety. AR 160. The Commissioner denied the claim initially and upon reconsiderations; thereafter, Mr. Hawver requested a hearing before an Administrative Law Judge ("ALJ"). AR 21. On June 20, 2011, an administrative hearing was held. AR 21, 39-73. The ALJ ruled that Mr. Hawver was not disabled at any time since he filed his application. AR 33. The Appeals Counsel denied Mr. Hawver's request for review on October 9, 2012, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Mr. Hawver now seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

PAGE 2 – OPINION AND ORDER

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is

>     not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v);
>     404.1560(c); 416.960(c). If the claimant cannot perform such work, he or
>     she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ applied the sequential process in her decision issued on September 22, 2011. AR 18-33. At step one, the ALJ found that Mr. Hawver has not engaged in substantial gainful activity since the date of his application. AR 23. At step two, the ALJ found that Mr. Hawver suffered from the following severe impairments: "a personality disorder NOS and substance-induced persisting psychosis." *Id.* At step three, the ALJ found that Mr. Hawver did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment. AR 24-25.

The ALJ then determined that Mr. Hawver has the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: "He can follow simple, routine instructions. He can perform simple tasks and make simple decisions. He can have no more than brief, incidental public contact." AR 25. In reaching this conclusion, the ALJ considered Mr. Hawver's symptom testimony and the testimony of Mr. Hawver's girlfriend, but found this testimony to be only partially credible because it was inconsistent with the medical record. AR 25-29, 31.

Additionally, the ALJ considered the reports of the treating, examining, and reviewing medical sources. The ALJ gave great weight to all but one of the findings of the two reviewing doctors, Dr. Bill Hennigns, Ph.D., and Dr. Joshua Boyd, Psy.D., concluding that the record did not support finding that Mr. Hawver is precluded from working in hazardous settings because his alcohol and amphetamine dependence appear to be in remission. AR 29. The ALJ purportedly gave great weight to the findings of Dr. Ronald D. Duvall, Ph.D., but did not mention Dr. Duvall's finding that Mr. Hawver has moderate impairments in his ability to interact appropriately with supervisors. *Id.* The ALJ gave some weight to the opinion of Dr. Nancy Cloak, M.D., however, more weight was given to Dr. Duvall because of the significant psychological testing that he performed. AR 30. The ALJ gave little weight to the opinion of Dr. Karla Causeya, Psy.D., because it appeared that Dr. Causeya relied on Mr. Hawver's subjective testimony in forming her opinion. *Id.* The ALJ gave no weight to treating sources Damon Williams, PMHNP, Janet Stein, FNP, and Jaime Lee, LCSW, claiming that their opinions were inconsistent with the medical records from Multnomah County Health Department. AR 30-31.

At step four, the ALJ heard testimony from a vocational expert ("VE"), who testified that an individual with like characteristics and impairments of the claimant would be able to perform his past relevant work as a welder. AR 32. Based on this testimony, the ALJ found that Mr. Hawver could perform his past relevant work and, thus, was not disabled. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# DISCUSSION

Mr. Hawver argues that the ALJ erred by: (1) improperly rejecting the opinion of examining psychologist Dr. Duvall that Mr. Hawver was moderately impaired in his ability to interact with supervisors; (2) improperly rejecting the opinions of the three treating mental health professionals; (3) improperly rejecting the opinion of the Disability Determination Services ("DDS") reviewing psychologists that Mr. Hawver could not work in hazardous environments; (4) improperly failing to consider the effects of stress on Mr. Hawver's ability to sustain employment; and (5) improperly failing to consider the side-effects of Mr. Hawver's medication on his ability to sustain employment.

## A. The ALJ Properly Incorporated Dr. Duvall's Medical Opinion

Mr. Hawver argues that the ALJ improperly excluded Dr. Duvall's finding that Mr. Hawver has moderate impairments in his ability to interact appropriately with supervisors. The Commissioner counters that although Dr. Duvall checked the box for moderate limitations regarding Mr. Hawver's ability to interact appropriately with supervisor, this limitation did not need to be included in the RFC. The Commissioner notes that on Dr. Duvall's form, "moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily," and that the ALJ's RFC, which states that Mr. Hawver can "follow simple routine instructions, perform simple tasks, make simple decisions, and [can] have no more than brief incidental public contact" adequately accounts for Dr. Duvall's moderate limitation in interaction with supervisors. AR 723, 68.  The Commissioner also notes that in Dr. Duvall's narrative report, Dr. Duvall opined that Mr. Hawver's past negative interactions with supervisors were likely caused by "the effects of constant alcoholism and amphetamine use while working," and that Mr. Hawver's success in the workplace would be "absolutely dependent on remaining clean and sober." AR 717, 722. Although Dr. Duvall noted that Mr. Hawver has had a history of

PAGE 7 – OPINION AND ORDER

conflict with authority figures, and is overly mistrustful of others' motives," Dr. Duvall ultimately opined that "there is no current cognitive deficit or psychiatric diagnosis which compels [Mr. Hawver] to deteriorate into frank psychosis if he is obliged to find work." AR 722.

An ALJ must consider "all of [a claimant's] medically determinable impairments," including "medically determinable impairments that are not 'severe,'" in making an RFC determination. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's findings, however, need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). As the court noted in *Valentine*, the full context of a medical opinion is relevant to determining if an ALJ ignored a limitation. 574 F.3d at 691 (analyzing the entire context of the a reviewing psychologist's opinion to conclude that "simple, paced (unrushed) tasks" did not exclude the claimant from completing more than just "simple" work given the "more in-depth Mental Residual Functional Capacity Assessment").

Dr. Duvall's narrative report and the definition of "moderate" demonstrate that the ALJ did not need to explicitly include the moderate limitation regarding interaction with supervisors in the RFC. First, Dr. Duvall's narrative indicates that Dr. Duvall thought Mr. Hawver, if sober, "should be able to learn, recall, and persist in work behaviors and tasks." AR 722. Moreover, the fact that "moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily," indicates that the supervisor limitation would not necessarily affect Mr. Hawver's ability to function in the workplace. Therefore, although not identical, the ALJ's RFC is consistent with the assessed limitations. *See Turner*, 613 F.3d at 1222-23.

**B.  The ALJ Improperly Rejected the Opinion of Three Mental Health Professionals**

Mr. Hawver argues that the ALJ improperly rejected the opinions of the three mental health professions—Damon Williams, PNHNP, Janet Stein, FNP, and Jamie M. Lee LCSW—who signed a letter expressing support for the findings and assessment of Dr. Karla Rae Causeya, Psy.D. The Commissioner argues that the ALJ properly rejected the opinion of these three non-acceptable medical sources because their letter was inconsistent with the treatment records.

SSR 06-03p defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p. Other health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician assistants, licensed clinical social works, naturopaths, chiropractors, audiologist, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of the individual's impairment(s) and how it affects the individual's ability to function." [1] *Id.* "In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). To reject the testimony of other non-acceptable medical sources, however, the ALJ must only give "reasons germane to each witness for doing so." *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to

---

[1] "Acceptable medical sources" are the only sources that can establish the existence of a medically determinable impairment, and the only sources that can be considered "treating" sources whose opinions are entitled to controlling weight. *Id.*

PAGE 9 – OPINION AND ORDER

which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or are of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-03p.

The fact that a source is an "acceptable medical source" sometimes entitles that source's opinions to more weight than the opinions from other medical sources. *Id.* Nonetheless, in certain instances, after applying the factors for weighing opinion evidence, and ALJ may properly find that an opinion from a medical source who is not an "acceptable medical source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. [2]

*Id.*

In this case, the ALJ gave no weight to the opinions of Mr. Williams, Ms. Stein, and Ms. Lee, because the ALJ found their opinions to be inconsistent with Mr. Hawver's medical records of treatment by Mr. Williams, Ms. Stein, and Ms. Lee's (from Multnomah County Health Department). AR 30-31. Rather than cite to a specific inconsistency, however, the ALJ cites to two exhibits generally, 15F and 17F, and states that these treatment records were inconsistent with the opinions of Mr. Williams, Ms. Stein, and Ms. Lee because they "show the claimant's symptoms are well controlled on medication and by his last session, in October 2010, his mood was significantly improved." *Id.*

---

[2] Giving more weight to the opinion of a non-acceptable medical source over a treating medical source does not violate the treating source rules under 20 C.F.R. 404.1527(d)(2).

PAGE 10 – OPINION AND ORDER

A close review of Exhibits 15F and 17F demonstrate that the medical records from Multnomah County Health Department are not inconsistent with letter signed by Mr. William, Ms. Stein, and Ms. Lee. Although several of the records do note that Mr. Hawver's symptoms are improved when taking Risperdal, they also consistently mention that Mr. Hawver is still experiencing auditory and visual hallucinations and that Mr. Hawver has a blunted affect, low energy, and a depressed mood. *See* AR 602, 607, 611, 617, 686, 687, 689, and 692. Moreover, Mr. Williams, Ms. Stein, and Ms. Lee mention the fact that Mr. Hawver's symptoms are "somewhat controlled by his Risperdal medications" in the letter. AR 708. Therefore, in both the medical records and the letter, Mr. Williams, Ms. Stein, and Ms. Lee consistently opine that Mr. Hawver's symptoms are improved by the Risperdal, but that Mr. Hawver still experiences symptoms of his paranoid schizophrenia and significant side-effects from the Risperdal, including grogginess, sedation, and inability to cope with fatigue. For these reasons, the ALJ did not give a "reason germane" to Mr. Williams, Ms. Stein, and Ms. Lee for discounting their letter, and erred in giving their opinions "no weight." The Court remands for reconsideration on this point.[3]

## C. The ALJ Did Not Err in Rejecting the Opinions of the Reviewing Psychologists

Mr. Hawver next argues that the ALJ improperly rejected the opinion of two reviewing psychologists (Dr. Bill Hennings, Ph.D., and Dr. Joshua Boyd, Psy.D.) who stated that Mr. Hawver should not work around hazards. The ALJ gave significant weight to the opinions of these reviewing psychologists, but rejected their opinion that Mr. Hawver should not work around hazards. AR 29. The ALJ stated that the limitation regarding hazards was not supported

---

[3] The Court notes that on remand, with reconsideration of the letter from Mr. Williams, Ms. Stein, and Ms. Lee, the ALJ may also decide whether to reconsider the weight given to Dr. Causeya's evaluation.

PAGE 11 – OPINION AND ORDER

by the record because Mr. Hawver's "alcohol and amphetamine dependence appear to be in remission." *Id.* Mr. Hawver argues that the ALJ erred in rejecting the hazards limitation because there is no evidence in the record that the reviewing psychologists based their opinion on the assumption that Mr. Hawver continued to use drugs or alcohol. Instead, Mr. Hawver argues, the psychologists' opinions could have been based on the significant evidence in the record that Mr. Hawver is groggy and forgetful because of the side-effects of Risperdal.

The Commissioner argues that the ALJ's conclusion that Dr. Hennings' and Dr. Boyd's opinions (that Mr. Hawver should not work in hazardous settings) were based on Mr. Hawver's previous substance abuse is a rational interpretation supported by substantial evidence in the record. The Court agrees. For example, Dr. Hennings diagnosed Mr. Hawver with "polysubstance dependence," without indicating that it was in remission. AR 582. Moreover, Dr. Hennings wrote that Mr. Hawver "seemed to be a reliable historian with the exception of his report of his last use of methamphetamine being in 2004 which conflicted with the record indicating that there had been more recent use, as indicated in a discharge summary dated September 2, 2008."[4] AR 581. For these reasons, the ALJ gave appropriate weight to the opinions of Dr. Hennings and Dr. Boyd. *See* 20 C.F.R. § 416.927(c).

### D. The ALJ Properly Considered the Effect of Stress on Plaintiff's Ability to Sustain Employment

Mr. Hawver's next argument is that the ALJ erred in failing to consider the effect of stress on Mr. Hawver's ability to sustain employment. Social Security Regulation 85-15 requires ALJs to consider the effect of stress on a claimant's ability to work:

> Individuals with mental disorders often adopt a highly restricted and/or inflexible lifestyle within which they appear to function

---

[4] Dr. Boyd's report concurs with the findings of Dr. Hennings' report, and does not independently discuss Mr. Hawver's impairments or diagnoses.

PAGE 12 – OPINION AND ORDER

> well. . . . The reaction to the demands of work (stress) is highly individualized and mental illness is characterized by adverse responses to seemingly trivial circumstances.

SSR 85-15.  Mr. Hawver testified that work increases his stress, which increases his schizophrenic symptoms. AR 183. Dr. Hennings noted that that Mr. Hawver suffers from social phobia. AR 581. Moreover, Dr. Nancy Cloak, M.D., examining psychiatrist, opined that work stress would increase Mr. Hawver's concentration impairments. AR 573. Finally, examining psychologist Karla Causeya, Psy.D., stated that work stress would increase Mr. Hawver's psychological symptoms. AR 706.

The Commissioner responds that because the ALJ properly discounted Mr. Hawver's symptom testimony as not credible and gave less weight to the opinions of Dr. Cloak and Dr. Causeya than the opinion of Dr. Duvall, who indicated that Mr. Hawver could handle work environment stresses, the ALJ did not err in failing to consider the effect of stress on Mr. Hawver's ability to sustain employment. *See* AR 722.

In accordance with Social Security Regulation 85-15, the ALJ considered the effect of workplace stressors on Mr. Hawver's ability to sustain employment. AR 32. Based on Dr. Duvall's report and other medical records, however, the ALJ found that Mr. Hawver's past challenges maintaining work were caused by Mr. Hawver's drug and alcohol dependence and not by symptoms caused by his mental illness. *Id.* ("Medical records show the claimant consistently reports to his medical practitioners that his jobs end because of drug and alcohol related absences, because intoxicated on the job, and unexplained absences."). For these reasons, the ALJ properly considered the effect of stress on Mr. Hawver's ability to sustain work.

PAGE 13 – OPINION AND ORDER

### E. The ALJ's Erred in Failing to Consider the Side-Effects of Medication on Mr. Hawver's Ability to Sustain Employment

Mr. Hawver's final argument is that the ALJ failed to consider the side-effects of medication on Mr. Hawver's ability to sustain employment. Risperdal, which Mr. Hawver takes every night to treat the symptoms of his schizophrenia, makes Mr. Hawver drowsy and groggy. *See* AR 51, 53, 166. The Commissioner asserts that the ALJ gave germane reasons to discount the testimony of Mr. Hawver and the lay witnesses, and the opinions of Dr. Cloak, Mr. Williams, Ms. Stein, and Ms. Lee, and therefore, did not need to address the issue of the side-effects of Mr. Hawver's medication.

The Court agrees with the Commissioner that the ALJ did not err in her credibility finding regarding Mr. Hawver and the other lay witnesses. The ALJ did not, however, give germane reasons for discounting the testimony of Mr. Williams, Ms. Stein, and Ms. Lee, as discussed above. Moreover, it is not clear from the record that Mr. Williams, Ms. Stein, and Ms. Lee based their opinions on Mr. Hawver's subjective testimony. Therefore, the Court remands on this issue for further consideration, taking into account the statements of Mr. Williams, Ms. Stein, and Ms. Lee, on whether the side-effects of Risperdal are likely to affect Mr. Hawver's ability to sustain employment.

## CONCLUSION

The Court **REVERSES** the Commissioner's final decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order. The ALJ should consider the medical source opinions of Mr. Williams, Ms. Stein, and Mr. Lee erroneously discredited. The ALJ should also consider the side-effects of any medication on Mr. Hawver's ability to sustain employment.

**IT IS SO ORDERED**.

DATED this 27th day of March, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge